# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHERYL A. LOOMIS** | : CIVIL ACTION |
| : | |
| **v.** | : |
| : | |
| **LIFE INSURANCE COMPANY OF** | : |
| **NORTH AMERICA**, et al. | : No. 09-3616 |

## MEMORANDUM OPINION

**Goldberg, J.**  June 21, 2011

Plaintiff, Cheryl Loomis, filed suit against Life Insurance Company of North America, d/b/a CIGNA Group Insurance (LINA) and Lockheed Martin Corporation (Lockheed), alleging a violation of § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Loomis claims that LINA abused its discretion in applying an improper standard in terminating her long-term disability benefits.

Before the Court are both parties' cross-motions for summary judgment. Because we agree that LINA did apply the wrong standard in deciding to terminate Plaintiff's disability benefits, Plaintiff's motion will be granted in part. Defendants' motion will only be granted so that Lockheed is dismissed. The basis for our ruling is set forth below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Cheryl Loomis began working for Lockheed as a desk support technician on March 16, 1998, and was covered by a long-term disability plan administered by LINA. The plan contained the

---

[1] Unless otherwise indicated, the following facts are undisputed.

1

following definition of disability:

> An employee will be considered Disabled if because of Injury and Sickness,
>
> 1. he or she is unable to perform each and every material duty of his or her regular occupation; and
>
> 2. after Monthly Benefits have been payable for 24 months, he or she is unable to perform each and every material duty of any occupation for which he or she may reasonably become qualified based on education, training or experience.

(Def.'s State. Facts ¶¶ 1, 4.)

In January 2007, Plaintiff took a leave of absence from work to be treated at the Renfrew Center (Renfrew) because she had lost approximately fifty percent of her body weight over a four year period and was having difficulty "concentrating and functioning on a daily basis due to struggling with her eating disorder symptoms [sic]." At the time of her admission, Plaintiff was 94.9 pounds, approximately 28 pounds less then her ideal body weight. Plaintiff received inpatient treatment at Renfrew for 24 days, and upon her discharge, was diagnosed with an eating disorder, major depressive disorder and generalized anxiety disorder. (LINA at 280-81.)[2]

On April 22, 2007, Plaintiff filed a claim for long-term disability benefits under LINA's policy, indicating that vision, shakes, fatigue and poor memory prevented her from working. In a contemporaneous disability questionnaire, she claimed that she was disabled due to anxiety, depression, poor memory, stress, weight loss, anger and vision problems. In conjunction with this claim, Plaintiff's primary care physician, Dr. Francis W. Brennan, submitted a Statement of

---

[2] Our citation to "LINA" refers to LINA's "Claim File Summary Information" for Plaintiff, which is Bates Stamped LINA 00001 through LINA 00516.

Disability identifying depression and anorexia as Plaintiff's disabling conditions, and opining that Plaintiff was "unable to return to work due to comprehensive testing by [a] gastroenterologist." (Def.'s State. Facts ¶¶ 1-2, 10-12, 19, 22, 26-28; Pl.'s State. Facts ¶ 5; LINA at 366-67, 421-22.)

LINA approved Plaintiff's disability claim on May 31, 2007 and began making monthly long-term disability payments of $3,236 on June 22, 2007. LINA's approval letter declared that Plaintiff was eligible for benefits, but did not describe the basis for its decision.[3] (Def.'s State. Facts ¶¶ 26-28; Pl.'s State. Facts ¶ 5.)

On September 13, 2007, LINA learned that the results of the gastrointestinal testing referenced in Dr. Brennan's Statement of Disability had come back negative. Thereafter, between September and December of 2007, LINA sent Plaintiff three letters asking her to submit the names of any behavioral therapists with whom she was receiving ongoing psychological treatment or counseling. Plaintiff failed to respond to these requests. On January 15, 2008, LINA wrote to Plaintiff claiming it had no current medical information to substantiate a disabling condition and terminating her long-term disability benefits as of January 9, 2008. (LINA at 231, 309-11.)

Because Plaintiff had been receiving benefits for less than 24 months, in reaching its decision, LINA was required to evaluate whether Plaintiff could "perform each and every material duty of . . . her regular occupation." LINA does not dispute this point. However, the "**Summary**" portion of LINA's January 15, 2008 denial letter provided:

> In reviewing your claim, Life Insurance Company of North America considered your

---

[3] In December 2009, Plaintiff began receiving social security disability benefits in the amount of $1,717 per month. Plaintiff concedes that if she receives a favorable ruling before this Court, Defendants would be entitled to an offset, effective June 2007, for the social security disability benefits that she received. (Pl.'s State. Facts ¶ 9.)

3

claim file as a whole for purposes of determining your entitlement to benefits. The Plan provides that Life Insurance Company of North America would pay benefits only if you are prevented by Disability from performing any occupation; however the weight of the evidence in your claim file supports your ability to perform any occupation.

(Def.'s State. Facts ¶¶ 32-35; Pl.'s State. Facts ¶ 8.) In the portion of this letter informing Plaintiff of her appellate rights, LINA did advise Plaintiff that she could submit recent test results demonstrating that she is "unable to perform all the material duties of your regular occupation as defined by the policy." (Pl.'s Admin. R. at 111.)

On February 20, 2008, Plaintiff's brother, Mike Quinn, sent correspondence to LINA, asserting that he was acting via a Power of Attorney and that Plaintiff would be appealing LINA's decision. Quinn further advised that he was trying to "organize all paperwork and send them to you, enabling you to make a better decision based on all the current information that can be obtained." Thereafter, Quinn supplemented the record with medical records and letters from Dr. Brennan and Plaintiff's gastrointestinal specialist, Dr. Rupal Kothari. (LINA at 212-22, 293-94, 296; Pl.'s State. Facts ¶¶ 14-15.)

In one of those supplements, Dr. Brennan opined that Plaintiff was "unable to function in her job as a computer support specialist," and was "totally unemployable" due to unexplained weight loss, anxiety, depression, chronic diarrhea, GERD, visual disturbances, tremors and a lack of concentration. Dr. Kothari's supplement concluded that Plaintiff was unable to work and had difficulty functioning independently due to "significant weight loss, developed confusion and gait instability[.]" In addition, in correspondence dated February 18, 2008 to Dr. Brennan, which was also submitted as supplemental material, Dr. Kothari noted that Plaintiff "seems to be worsening"

and that "she would benefit from hospitalization or institutionalized as [he] question[ed] her self destructive behavior." (Pl.'s Admin. R. at 60, 97-98; Pl.'s State. Facts ¶¶ 14-15; Def.'s State. Facts ¶¶ 44, 47.)

LINA issued a final denial letter on July 25, 2008, affirming its earlier decision and concluding that the evidence of record did not demonstrate she was "incapable of working due to an eating disorder" or "unable to return to work due to cognitive impairment[.]" In its final denial letter, LINA further determined that Plaintiff had failed to submit evidence to "support psychiatric functional impairment of severity to preclude her capacity to work." In support of its decision, LINA relied upon the opinions of Dr. Scott Taylor and Dr. Randal Unsell, two of its internal "Medical Directors[.]" (Pl.'s Admin. R. at 12-14.)

Specifically, Dr. Taylor reviewed the evidence of Plaintiff's physical impairments and concluded that the medical records did not support the "restrictions indicated by [her] treating physician after [January 8, 2008]." Dr. Unsell performed a psychiatric review and concluded that Plaintiff's impairments were not "of severity to preclude [Plaintiff's] capacity to work." LINA adopted the opinions of Drs. Taylor and Unsell and noted that, if Plaintiff wished to request a review of its decision, she was required to submit new documentation reflecting her " inability to work any occupation." (LINA at 199-201); see (Pl.'s State. Facts ¶¶ 14-17; Def.'s State. Facts ¶¶ 43-44, 47.)

On August 7, 2009, Plaintiff initiated this action against the Defendants, alleging that they improperly terminated her long-term disability benefits. The Parties have filed cross motions for summary judgment.

## II. STANDARD OF REVIEW

In reviewing a plan administrator's denial of disability benefits under ERISA, "'the district court sits more as an appellate tribunal than as a trial court.'" Gibson v. Hartford Life & Accident Ins. Co., 2007 WL 1892486 at *5 (E.D.Pa. Jun. 29, 2007) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)); see also Harper v. AETNA Insurance Co., 2011 WL 1196860 at *2 (E.D.Pa. Mar. 31, 2011). Where, as here, the plan administrator has discretion to determine whether a claimant is eligible for benefits, the court must examine "the record as a whole," Gibson, 2007 WL 1892486 at *5 (quotation omitted), and determine whether the administrator's termination of benefits was "arbitrary and capricious." Miller v. American Airlines, Inc., 632 F.3d 837, 844-45 (3d Cir. 2011).

An administrator's decision is arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Id. When applying this standard, "a court may not substitute its own judgment" for that of the plan administrator. Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 256 (3d Cir. 2004). The court must consider, among other factors, the manner in which the plaintiff's claim was processed, whether the administrator abided by its own procedural requirements, the reasons underlying the administrator's decision and whether the structure of the plan provided the administrator with a financial incentive to deny or terminate disability claims. Id., see Harper, 2011 WL 1196860 at **2-3 (discussing the "procedural" and "structural" components of arbitrary and capricious review). Ultimately, arbitrariness is determined by "taking account of several different, often case-specific, factors, reaching a result by weighing all together." Metro Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008).

In undertaking this review, and in ruling upon the pending motions, we may only grant summary judgment if "the moving party is entitled to judgment as a matter of law, with the facts viewed in the light most favorable to the nonmoving party."[4] Kossler v. Crisanti, 564 F.3d 181, 186 (3d Cir. 2010); see Fed. R. Civ. P. 56(c). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). After the moving party has met its initial burden, the burden shifts to the nonmoving party to demonstrate that a genuine issue of material fact exists, making summary judgment inappropriate. Connection Training Servs. v. City of Philadelphia, 358 Fed. Appx. 315, 318 (3d Cir. 2009). This standard is no different where there are cross motions for summary judgment. See Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).

### III. DISCUSSION

Section 502(a)(1)(B) of ERISA allows participating employees to bring a claim to recover benefits they are entitled to under the terms of their employee benefit plans. 29 U.S.C. § 1132(a)(1)(B). Pursuant to this provision, Plaintiff asserts that LINA improperly terminated her long-term disability benefits, citing several alleged errors during the review process. Plaintiff's chief

---

[4] The summary judgment standard is relevant to our determination. See Miller, 632 F.3d at 844-45 (citing standard set out in Federal Rule of Civil Procedure 56). Although deciding whether an administrator's decision is "arbitrary and capricious" is a legal determination, to the extent any underlying facts of record are in dispute, Federal Rule of Civil Procedure 56 controls. This distinction is particularly relevant in this case, because there is a dispute, not only as to whether Defendants acted arbitrarily and capriciously, but also as to what standard of review the Defendants actually applied in disposing of Plaintiff's disability claim. We consider the latter issue, which addresses the actions taken by Defendants, to be akin to a factual issue that should be addressed under the standards set forth in Rule 56.

argument is that LINA ignored clear policy language and terminated her benefits using the wrong standard. Defendants insist that they applied the correct standard, and ask that we affirm LINA's decision.[5] See (Def.'s Resp. at 3-8; Def.'s Br. at 8-16.)

Any action taken by a plan administrator inconsistent with the terms of unambiguous policy language is arbitrary. Bill Gray Enterprises, Inc. Employee Health & Welfare Fund v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001); see also Vitale v. Latrobe Area Hosp., 420 F.3d 278, 282 (3d Cir. 2005). According to LINA's policy, Plaintiff was entitled to long-term disability benefits during the initial twenty-four months of her alleged disability if she was unable to perform each and every material duty of her "regular occupation." Because Plaintiff had only collected disability benefits for six and a half months on the date her benefits were terminated, it is undisputed that LINA should have analyzed her claim under the "regular occupation" standard.

Although LINA was obligated to apply the "regular occupation" standard, we find that it acted arbitrarily and applied the "any occupation" standard in terminating Plaintiff's benefits. Although LINA's denial letter contains "regular occupation" language in the section notifying Plaintiff of her right to an appeal, the "**Summary**" portion of the letter, which directly communicates LINA's decision, clearly states that LINA "would pay benefits only if you are prevented by Disability

---

[5] Defendants also argue that Defendant Lockheed Martin Corporation (Lockheed) should be dismissed from this case because it had no role in the decision to terminate Plaintiff's benefits. Pursuant to 29 U.S.C. § 1132(a)(1)(B), the proper defendant in a claim for wrongful denial of benefits is "the plan itself or the person who controls administration of benefits under the plan." Evans v. Employee Benefit Plan, Camp Dresser & McKee, Inc., 311 Fed.Appx 556, 558 (3d Cir. 2009). Because Plaintiff does not dispute Defendants' argument and the record reveals that LINA was the sole entity with discretion to make benefit determinations, Lockheed is not a proper defendant and will be dismissed.

from performing any occupation; however the weight of the evidence in your claim file supports your ability to perform any occupation." (Def.'s State. Facts ¶¶ 32-35.)

LINA posits that its reference to the "any occupation" standard is a typographical error. An examination of LINA's denial letter belies this argument. The substance of the denial letter recites the factual history of Plaintiff's claim without mentioning her specific job requirements or providing any analysis as to whether she could perform her job requirements. LINA's failure to consider Plaintiff's specific job demands is a significant oversight and suggests that its termination decision "was not reasoned and based on an individualized assessment" of her abilities.[6] Indeed, it is "essential that any rational decision to terminate disability benefits under an own-occupation plan consider whether the claimant can actually perform the specific job requirements of a position." Miller, 632 F.3d at 854-55.

LINA also contends that any "theoretical prejudice" resulting from its initial denial letter was cured by its application of the "regular occupation" standard on administrative appeal. This argument fails for a number of reasons. First, after setting out the general "Definition of Disability" under both of the "regular" and "any occupation" standard, LINA's final denial letter does not mention the "regular occupation" standard. To the contrary, when notifying Plaintiff of her

---

[6] Miller v. American Airlines, Inc., 632 F.3d 837, 854-55 (3d Cir. 2011) (failure to consider job requirements suggests that a decision to terminate benefits was arbitrary and capricious); see also Elliot v. Metro Life Ins. Co., 473 F.3d 613, 619 (6th Cir. 2006) (finding that an administrator's decision could not be considered reasoned when it merely recites medical terminology used by physicians examining the claimant and does not discuss her ability to perform her job requirements). Cf. Lamanna v. Special Agents Mut. Benefits Ass'n, 546 F.Supp.2d 296-97 (W.D.Pa. 2008) (holding that failure of administrator to make reasonable inquiry into the types of skills plaintiff possessed or whether those skills were transferrable to another position contributed to finding that administrator abused its discretion).

appellate rights, LINA noted that Plaintiff should submit medical records "document[ing her] . . . inability to work any occupation." (Pl.'s State. Facts ¶¶ 16-17; Pl.'s Admin. R. at 13.)

Second, the "regular occupation" analysis that LINA claims was conducted on appeal is entirely ambiguous. LINA's final denial letter states that Plaintiff failed to demonstrate that she was "incapable of working due to an eating disorder[,]" is "unable to return to work due to cognitive impairment," and that her medical records did not "support psychiatric functional impairment of severity to preclude her capacity to work." It is unclear whether these statements refer to her capacity to work as a desk support technician or her capacity to return to work in any occupation. Even when viewed in a light most favorable to Defendant, it would be unreasonable to read this language consistent with the "regular occupation" standard, considering LINA again failed to address whether she could perform the material responsibilities of her former position.

In further support of its argument that the proper standard was applied, LINA also points to the "independent medical reviews" performed by physician, Dr. Scott Taylor and psychiatrist, Dr. Randall Unsell. LINA asserts that the opinions of Drs. Taylor and Unsell do not mention "any occupation" and demonstrate that a "regular occupation" analysis was performed. The record, however, does not support this contention.

On May 18, 2008, Dr. Taylor reviewed Plaintiff's medical records and opined that they did not substantiate the opinion of her treating physician, Dr. Brennan, who determined that Plaintiff was "totally unemployable." In the initial portion of his report, Dr. Taylor describes LINA's initial denial of Plaintiff's benefits as "Any Occupation 1/9/08[,]" again suggesting that the wrong standard was applied. While Dr. Taylor's report also notes that LINA "denied claim Her Occupation 1/9/08 [,]"

10

and references Plaintiff's job title and work demands, the substantive portion of the report does not in any way indicate that Dr. Taylor considered whether Plaintiff's limitations prevented her from performing the material duties of her position. Without any such analysis, we are unable to conclude that Dr. Taylor's report indicates LINA applied the "regular occupation" standard.

Dr. Unsell's opinion is also of little help to LINA. On July 14, 2007, Dr. Unsell conducted a psychiatric review. His medical review letter, however, simply recites various statements and letters issued by Plaintiff's physicians and concludes that Plaintiff has the "capacity to work" and is not "incapable of working." Dr. Unsell's analysis never refers to the "regular occupation" standard or otherwise suggests that the correct standard was applied.

We conclude, therefore, that LINA failed to evaluate Plaintiff's claim under the "regular occupation" standard, although unambiguous policy language required it to do so.[7] Along with making continuous reference to the more stringent "any occupation" standard, LINA did not evaluate whether Plaintiff could perform the specific job demands of her former position, as required under the "regular occupation" standard. We also note that LINA acts both as "payor and administrator" for the disability policy at issue, providing it with a financial incentive to terminate or deny disability claims. This conflict of interest is a relevant factor that raises additional concerns regarding the

---

[7] See Bill Gray Enterprises, Inc. Employee Health & Welfare Fund v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001) (holding that administrative action that is inconsistent with unambiguous policy language is arbitrary); see also Vitale v. Latrobe Area Hosp., 420 F.3d 278, 282 (3d Cir. 2005) (directing that an administrator's decision "will be overturned only if it is 'clearly not supported in the record or the administrator has failed to comply with the procedures required by the plan'") (quotations omitted).

appropriateness of LINA's decision and provides further support for our determination. See Miller, 632 F.3d at 845 (citing Post v. Hartford Inc. Co., 501 F.3d 154, 162 (3d Cir. 2007).

LINA also asserts that even if it applied the wrong standard, its decision should stand as the evidence of record supports termination of her benefits under either standard. Thus, according to LINA, any error it committed was harmless and should be disregarded. (Def.'s Resp. 2, 6-8); see (Def.'s Br. 8-11.) We disagree.

When there is an "abundance of evidence" in support of a plan administrator's decision, a reviewing court may disregard, or at least weigh less heavily, the administrator's procedural errors or financial conflict of interest.[8] Here, however, the evidence Plaintiff provided in support of her continued disability convinces us that application of the harmless error principle is inappropriate. Although Plaintiff initially failed to submit information regarding her psychiatric treatment, at the request of LINA, her brother and power of attorney, Mike Quinn, supplemented the record with additional evidence in support of her claim in March 2008.

Among the information Quinn submitted was a letter from Plaintiff's treating physician, Dr. Brennan, who opined that she was "totally unemployable" due to her memory loss, lack of concentration and irritable bowel syndrome. Dr. Brennan also pointed to Plaintiff's continuous weight loss and the "obvious tremors of her hands." The record also reflects that Plaintiff visited Dr. Brennan's office on February 7, 2008 and March 28, 2008. On February 7, Dr. Brennan recorded

---

[8] Miller, 632 F.3d at 846 (quoting Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525-26 (3d Cir. 2009) (noting that procedural errors or conflicts of interests may not "tip[] the scales in favor of finding that the [administrator] abused its discretion[,]" where there is an abundance of evidence in support of the administrator's decision).

that she was 97 pounds, and noted depression, anxiety and "weight loss/malabsorbtion." On March 28, Plaintiff complained that she was having "trouble with her memory [and] difficulty keeping track of things." Plaintiff was recorded as being 95 pounds. (Pl.'s Admin. R. at 22-23.)

Plaintiff also submitted information from her gastrointestinal specialist, Dr. Rupal Kothari, who opined that she was not able to work as a result of "significant weight loss, developed confusion and gait instability which has considerably limited her ability to function independently." Further, on February 18, 2008, Dr. Kothari sent correspondence to Dr. Brennan, noting that Plaintiff "seems to be worsening" and that "she would benefit from hospitalization or institutionalized as [he] question[ed] her self destructive behavior." (Pl.'s Admin. R. at 60, 97-98.)

In light of this evidence, we are unable to conclude that LINA's decision was supported by an "abundance of evidence," such that we can ignore its procedural errors.

## IV. Remedies

When a plan administrator inappropriately terminates a plaintiff's disability benefits, the district court has discretion in fashioning a remedy. See, e.g., Carney v. Int'l Brotherhood of Electrical Workers Local Union 98 Pension Fund, 66 Fed.Appx. 381, 385-87 (3d Cir. 2003). Plaintiff contends that we should award her retroactive disability benefits from January 9, 2008, the date her benefits were terminated, continuing up until the remainder of her initial 24-month period of "regular occupation" coverage. She also requests a remand to the administrator for consideration of whether she is entitled to additional benefits and for leave to file an "appropriate request for attorneys' fees and costs."

In Miller, the United State Court of Appeals for the Third Circuit held that when a plaintiff's benefits are improperly terminated, the court must retroactively reinstate his or her benefits to restore the "status quo" prior to the administrator's improper decision. Miller, 632 F.3d at 856-67. Thus, because Plaintiff's benefits were improperly terminated, she is entitled to receive retroactive reinstatement of her benefits from January 9, 2008, the day they were terminated, until June 22, 2009, the day Plaintiff's initial 24-month period of disability benefits expired. This amount shall be offset by the social security disability benefits that Plaintiff received during this period.

We also conclude that it is appropriate to remand this case to the administrator for a determination as to whether Plaintiff was disabled under the plan as of June 23, 2009 – the day the "any occupation" standard of disability would have went into effect.[9] In reaching this conclusion, we adopt the approach taken in Haisley v. Sedgwick Claims Management Services, Inc., 2011 WL 818669 at **18-20 (W.D.Pa. Mar. 2, 2011). Facing a situation similar to the one presented here, the Haisley court awarded plaintiff retroactive benefits for the initial 24-month period and remanded to the administrator to determine whether plaintiff was entitled to receive additional payments after that date. 2011 WL 818669 at *20. The court determined that this remedy accounted for the change in the disability standard at the close of the initial 24-month period and placed the plaintiff in the position she was in prior to the administrator's improper termination of her benefits. Id. at *19.

---

[9] We acknowledge that the Third Circuit, in a non-precedential opinion, has found remand for an "any occupation" review to be unnecessary in certain circumstances. Serbanic v. Harleysville Life Insurance Co., 325 Fed.Appx. 86 (2009). However, Serbanic is distinguishable from the case at bar because there was overwhelming evidence that the plaintiff was not disabled under an "any occupation" standard. Here, the evidence is not such that we can independently conclude that she could perform "any occupation" as of June 23, 2009. We, therefore, will remand this case to allow LINA to make that determination.

14

Plaintiff also requests attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1). A district court has the discretion to award reasonable attorney's fees to either party. When determining whether to award attorney's fees a court must consider five factors: "(1) the offending party's culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' positions." Matorana v. Board of Trustees of Steamfitters of Local 420 Health, Welfare, and Pension Fund, 404 F.3d 797, 804 (3d Cir. 2005). We also have discretion to award costs, provided they are reasonable and reimbursable under applicable law. See Gorina v. AMP, Inc., 2004 WL 1354465 at *7 (M.D.Pa. Mar. 14, 2004) (awarding taxable costs under ERISA, listed under 28 U.S.C. § 1920 as well as other expenses).

In order to properly address this issue, we will provide Plaintiff leave to file a petition for attorney's fees and costs, stating her argument as to why she should be entitled to these remedies under 29 U.S.C. § 1132, and applicable precedent.[10]

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment are granted in part and denied in part, consistent with this Opinion.

Our Order follows.

---

[10] Plaintiff also asks that we issue an injunction preventing LINA from "using objective test results as the criteria for whether someone is disabled." (Pl.'s Br. at 7.) However, because we did not reach the issue of whether it was improper for LINA to look to clinically measurable testing in rejecting Plaintiff's claim, we will not issue an injunction addressing this practice.