IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHERYL A. LOOMIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LIFE INSURANCE COMPANY OF** | : | |
| **NORTH AMERICA, et al.** | : | **NO. 09-3616** |

## ORDER

**AND NOW**, this 30th day of March, 2012, upon consideration of Plaintiff's "Motion for Back Benefits and Interest Owed by Defendant Life Insurance Company of North America" (Doc. No. 52), Plaintiff's "Motion for Attorney Fees and Costs Against Defendant Life Insurance Company of North America" (Doc. No. 55), Plaintiff's amendments and revisions to these Motions, (Doc. No. 57, Ex. 2; Doc. No. 70, Attachment 2; Doc. No. 77), and Defendant's responses, we find as follows:

1. On June 21, 2011, we issued a Memorandum Opinion and Order granting Plaintiff's Motion for Summary Judgment, finding that Defendant, Life Insurance Company of North America (LINA), had improperly terminated Plaintiff's long term disability benefits. (Doc. Nos. 50, 51.) A brief background regarding this decision is as follows:

2. Plaintiff was employed as a desk support technician for Lockheed Martin and was covered by a Long Term Disability Plan (Plan) administered by LINA. She was awarded disability benefits in May 2007, and under the Plan, was entitled to continuing benefits for the first 24 months of her disability period, unless LINA determined that she could perform "each and every material duty" of her "regular occupation." See (Memo. Op., Jun. 21, 2011, at 1-2.)

3. LINA, however, terminated Plaintiff's benefits on January 9, 2008, approximately six months into her disability period, asserting that "The Plan provides that Life Insurance Company of North America would pay benefits only if you are prevented by Disability from performing any occupation; however the weight of the evidence in your claim file supports your ability to perform any occupation." We concluded that this standard was applied erroneously and is only applicable after an employee's initial 24-month period of disability. See (Memo. Op., Jun. 21, 2011, at 1-2, 7-14.)

4. Having found that LINA acted arbitrarily in terminating Plaintiff's benefits, we concluded that Plaintiff was entitled to receive retroactive reinstatement of her benefits from January 9, 2008, the day benefits were terminated, until June 22, 2009, the day Plaintiff's initial 24-month period of disability benefits expired. This amount, however, was to "be offset by the social security disability benefits that Plaintiff received during this period." The case was also remanded to the Plan Administrator for a determination as to whether Plaintiff was disabled as of June 23, 2009. See (Memo. Op., Jun. 21, 2011, at 13-14.) We also ordered Plaintiff to file a motion setting forth the amount of back benefits she was owed, as well as a petition expanding upon her request for attorney's fees and costs under 29 U.S.C. § 1132. (Doc. No. 51.) Plaintiff's motions for back benefits and attorney's fees are now fully briefed and ready for disposition.

BACK BENEFITS & INTEREST

5. The parties agree that, setting aside cost of living adjustments and interest, Plaintiff is entitled to back benefits in the amount of $3,236 per month from approximately

January 9, 2008 (the date of termination) until June 22, 2009 (the end of the 24-month period),[1] less the $1,688 per month she received in social security disability benefits. Plaintiff was awarded social security benefits on December 23, 2009, but these benefits were made retroactive from June 2007. (Doc. No. 52, Ex. E; Doc. No. 54, Ex. A; Doc. No. 57, Ex. 2.)

6. LINA contends, however, that it is entitled to an offset of an additional $844 a month to account for derivative social security benefits that Plaintiff's "children received or are assumed to receive." LINA's position is based upon the section of the Plan relating to offsets for "Other Income Benefits." (Doc. No. 54 at 4-5.) That section provides:

> While an Employee is Disabled, he or she may be eligible for benefits from other income sources. If so, the Insurance Company may reduce the Disability Benefits payable by the amount of such Other Income Benefits. . . . Other Income Benefits include:
> . . . .
> 2. Any Social Security disability or retirement benefits the Employee or any third party receives (or is assumed to receive*) on the Employee's behalf or for his or her dependents; or if applicable, which his or her dependents receive (or are assumed to receive*) because of the Employee's entitlement to such benefits.
> . . . .
> [*]*Assumed Receipt of Benefits*
> The Insurance company will assume the Employee (or his or her dependents, if applicable) are receiving Other Income Benefits if they may be eligible for them . . . . Disability Benefits will be reduced by the amount of any assumed benefits as if they were actually received. . . . This assumption will not be made if the Employee gives the Insurance Company proof of the following events.
> 1. Application was made for these benefits

---

[1] Defendant contends that the applicable period is actually from January 10, 2008 until June 21, 2009. (Doc. No. 54 at 3 n.5.)

        2.      A Reimbursement Agreement is signed
        3.      Any and all appeals were made for these benefits or the Insurance Company determines further appeals will not be successful
        4.      Payments were denied.

(Doc. No. 57, Ex 2, Ex. A at 38-40)

7. LINA contends that, during the pertinent period, at least one of Plaintiff's children was eligible for "Child's Benefits" under the federal regulations governing the Social Security Administration, because he or she was Plaintiff's "natural child," was under 18 years of age and was unmarried. See (Doc. No. 54 at 5 & n.6) (citing 20 C.F.R. §§ 404.350, 404.355, 404.361.) LINA asserts, therefore, that pursuant to the above Plan language, it is entitled to assume that the child received such benefits, absent any indication otherwise. It further contends that the amount of social security benefits for Plaintiff's dependent would be $844 per month under the social security regulations. See (Doc. No. 54 at 5 & n.7) (citing 20 C.F.R. §§ 404.353.)

8. In response, Plaintiff disagrees and asserts that the issue of whether an offset should apply for her dependents' assumed benefits is "waived," because it was never raised at the administrative level. Alternatively, Plaintiff contends that a remand is appropriate to allow the Plan Administrator to rule on this issue. (Doc. No. 60 at 3-4.)

9. We are unable to conclude that this issue is waived, because it was never ripe for review during the administrative review process. LINA terminated Plaintiff's long term disability benefits in January 2008, well before Plaintiff was awarded social security benefits in December 2009. (Doc. No. 52, Ex. E.)

10. Further, in LINA's answer to Plaintiff's complaint in this matter, it included an "Affirmative Defense" asserting that "[i]f the Court determined that Plaintiff is entitled to disability benefits, which Defendants deny, then pursuant to the insurance policy at issue, LINA is entitled to offset the benefit amount due to Plaintiff by other income received, including but not limited to Social Security Disability benefits[.]" (Answer p. 9.) Given this asserted defense, we are unable to conclude that LINA failed to raise the issue of an offset based upon Plaintiff's social security benefits, including those that might be available to her "dependents."

11. We will, however, remand this matter to the Plan Administrator for a determination regarding whether the alleged eligibility of Plaintiff's children to social security payments limits the amount of back benefits she is owed, and if so, to what extent. This issue raises important questions regarding the interplay between the definition of "dependent" in the Plan and in the social security regulations. In addition, Plaintiff alleges that she has been "estranged" from her children, which could impact whether the children are "dependents" under the Plan or whether such payments may still be considered "Other Income Benefits" for Plaintiff. (Doc. No. 60 at 6.) These questions are best left for the Plan Administrator to decide.[2]

12. The parties further disagree as to how a 3% "cost of living adjustment" (COLA) for

---

[2] In reaching this conclusion, we reject Plaintiff's argument that LINA's "inequitable" conduct precludes them from collecting any offsets provided in the Plan under "traditional equitable principles." (Doc. No. 60 at 7-8.) As Plaintiff acknowledges, this is a "novel" argument, and we are unable to locate any case where a court denied the administrator its rights under a plan, due to its alleged bad faith or "outrageous conduct." Further, even if such a remedy were available, we would not adopt that approach on the facts of this case.

Plaintiff's monthly disability benefits should be calculated under the Plan. Plaintiff contends that her COLA should be assessed based upon her total or gross monthly disability benefits, regardless of any applicable offset. (Doc. No. 60 at 8-9.) LINA, however, asserts that the COLA must be calculated based upon her net disability benefit, after all offsets are assessed. On remand, the Plan Administrator is directed to also determine how Plaintiff's COLA is calculated under the Plan for the period relevant to this case.

13. LINA also asserts that any back benefits due to Plaintiff should be further reduced by the amount it "overpaid" Plaintiff before terminating her disability benefits on January 9, 2008. Specifically, LINA paid Plaintiff six months of disability benefits, without reducing her benefits to account for her social security benefits. LINA seeks to recover the alleged overpayment, relying upon a provision in the Plan that states "[i]f benefits are overpaid, the Insurance company has the right to recover the amount overpaid by . . . [a] reduction of any amounts payable under the Policy." See (Doc. No. 57, Ex 2, Ex. A at 38-40)

14. Plaintiff contends that this argument is "waived" because LINA was required to raise this issue in a counterclaim for restitution. We disagree with Plaintiff. The basis for any counterclaim for restitution – here, Plaintiff's entitlement to social security – was not determined until after an answer was filed in this case. See (Doc. No. 52, Ex. E) (reflecting the Social Security Administration's disability award letter to Plaintiff, dated December 23, 2009.) LINA, therefore, was not obligated to file a counterclaim on this basis and did not waive their ability to seek restitution of overpaid benefits.

>  See 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1428 (2010) (providing that a counterclaim that "matured" after a defendant's answer "is not considered a compulsory counterclaim under [Federal Rule of Civil Procedure 13(a)] and failure to interpose it will not bar its assertion in a later suit").

15. Plaintiff also argues that even if this issue is not waived, LINA's attempt to recoup overpayment to limit damages in this action is improper. Plaintiff asserts that LINA is effectively seeking to enforce an "equitable lien by agreement," which is a separate ERISA claim that must be plead and proven and may not be asserted as a damages offset. (Doc. No. 60 at 2); see Funk v. Cigna Group Inc., 648 F.3d 182, 194-95 (3d Cir. 2011) (providing that a fiduciary may seek recoupment of overpaid benefits as a result of an employee's receipt of social security payment in an ERISA action to enforce an "equitable lien by agreement"). On this point, we agree with Plaintiff, and therefore, will not order restitution of alleged overpayments in connection with this action.[3] See Jackson v. Wilson, Sonsini, Goodrich & Roasti Long Term Disability Plan, 2010 WL 3398493 at *7 (N.D.Cal. Aug. 27, 2010) (rejecting defendant's attempt to limit damages as a result of overpayment to plaintiff, because defendant "merely requested an offset to any judgment in Plaintiff's favor, and did not counterclaim for reimbursement").

---

[3] We note, however, that Plaintiff also argues that LINA has "surrendered" its right to ever recover any overpayments as a result of its "gross, clear and unequivocal violation of Plaintiff's Plan rights." (Doc. No. 60 at 7-8.) We reject this argument as Plaintiff cites to no authority that suggests LINA has somehow surrendered its right to collect such payment in a separate action or through the procedures delineated in the Plan, if such options are otherwise available.

16. Lastly, Plaintiff asserts that we should award her prejudgment interest on her back benefits. A district court has discretion to award prejudgment interest to the prevailing party and to determine the rate of interest. <u>Fotta v. Trustees of United Mine Workers of America, Health & Retirement Fund of 1974</u>, 165 F.3d 209, 213 (3d Cir. 1994) (holding that 29 U.S.C. § 1132 (a)(3)(B) allows a beneficiary to sue for "other equitable remedies," including prejudgment interest). Because the amount of Plaintiff's back benefits is still undetermined and will be subject to review by the Plan Administrator, we reserve judgment on this issue until the close of the administrative review process.

<u>ATTORNEY'S FEES</u>

17. A party that achieves "some degree of success on the merits" in an ERISA action is eligible for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). <u>Hardt v. Reliance Standard Life Ins. Co.</u>, 130 S.Ct. 2149, 2158 (2010). To satisfy this standard, a party must achieve more than a "trivial success" or a "'purely procedural victor[y.]'" <u>See id.</u> (quotations omitted). Plaintiff has clearly attained more that a trivial success on the merits in this action, and therefore may be entitled to attorney's fees. In determining whether fees are appropriate in a given case, district courts in the Third Circuit continue to apply the five factor test enunciated in <u>Ursic v. Bethlehem Mines</u>, 719 F.2d 670, 673 (3d Cir. 1983). <u>See</u> <u>e.g.</u>, <u>Templin v. Independence Blue Cross</u>, 2011 WL 3664427 at *4 (E.D.Pa. Aug. 19, 2011) (applying <u>Ursic</u> factors); <u>Howley v. Mellon Fin. Corp.</u>, 2011 WL 2600664 at *1 (D.N.J. Jun. 27, 2011) (same).

18. The five <u>Ursic</u> factors are: "(1) the offending party's culpability or bad faith; (2) the

8

ability of the offending parties to satisfy an award of attorney's fees; (3) the deterrent effect of an award of attorney's fees; (4) the benefit conferred upon members of the pension plan as a whole; and (5) the relative merits of the parties' positions." Martorana v. Bd. of Trustees of Steamfitters of Local 420 Health, Welfare and Pension Fund, 404 F.3d 797, 804 (3d Cir. 2005). A party requesting attorney's fees does not have to demonstrate each of the factors to be entitled to a fee award. See Fields v. Thompson Printing Co., Inc., 363 F.3d 259, 275-76 (3d Cir. 2004).

19. Under the first factor, attorney's fees may be appropriate if a plaintiff can show that the defendant exercised bad faith or an ulterior motive, or engaged in blameable or reprehensible conduct involving the breach of a legal duty or the commission of a fault. McPherson v. Employees' Pension Plan of Am. Re-Ins. Co., Inc., 33 F.3d 253, 254 (3d Cir. 1994). The plaintiff must show more than simple negligence, but malice or a guilty purpose is not required. Id.

20. Here, LINA expressly failed to apply the appropriate standard in terminating Plaintiff's disability benefits, and its error was never corrected at any point during the administrative appeal process. Plaintiff's disability benefits, therefore, were terminated based upon a standard that was less favorable to her. LINA's failure to follow the clear language of the Plan during the review process represents the breach of a legal duty that was more than simple negligence and supports a finding of fees under this factor. Cf. Hann v. Reliance Standard Life Ins. Co., 2011 WL 1344516 at *12 (M.D.Pa. Mar. 18, 2011) (finding the first Ursic factor supported an award of fees where the defendant "did act with some degree of culpability because it deemed

        the child plaintiff's dependent without utilizing the applicable definition under the Social Security Act").

21. There is no dispute that the second factor supports a fee award, as LINA is capable of satisfying a request for attorney's fees. The third factor requires a party to show that an award of attorney's fees would have a deterrent effect on the offending party. In McPherson, the Third Circuit noted that an award of fees may serve as a deterrent when the conduct at issue falls "short of bad faith conduct," because imposition of a fee award will make a "plan less likely and not so quick to deny benefits to other participants[.]" 33 F.3d at 258 (quoting Kann v. Keystone Res., Inc. Profit Sharing Plan, 575 F.Supp. 1084, 1096-97 (W.D.Pa. 1983)).  An award of attorney's fees in this case will deter LINA from terminating disability benefits without reference to, or application of, the standard that is guaranteed to Plan participants during the first 24 months of the long term disability period. A more careful application of this fundamental aspect of the administrative review process will also benefit members of the Plan as a whole, thereby satisfying the fourth factor.

22. Lastly, the fifth factor – the relative merits of the parties' positions – also favors a fee award. The fact that Plaintiff prevailed in this action does not automatically satisfy this factor. See Brown v. Continental Cas. Co., 2005 WL 1949610 at *2 (E.D.Pa. Aug. 11, 2005). Rather, we must consider LINA's position relative to the prevailing Plaintiff. Addis v. Ltd. Long-Term Disability Program, 2006 WL 2387087 at *3 (E.D.Pa. Aug. 3, 2006). As described in our Memorandum Opinion, LINA asserted that its reference to the wrong standard in its decision terminating Plaintiff's benefits

      was a "typographical error" and that its appellate review cured any resulting prejudice. (Memo. Op., Jun. 21, 2011, at 7-13.) Considering the fact that the wrong standard was referenced throughout LINA's review process and there was no consideration of Plaintiff's specific job duties, a critical feature of the applicable "regular occupation" standard, we conclude that the relative merits of the parties' positions favors Plaintiff.

23. For the foregoing reasons, the five Ursic factors favor the imposition of attorney's fees in this case, and we will proceed to address LINA's challenges to Plaintiff's fee request.[4]

24. As acknowledged by the parties, the appropriate way to calculate attorney's fees is based upon the "lodestar," which is calculated by multiplying an attorney's hourly rate by the number of hours he or she reasonably spent on the case. See Interfaith Cmty. Org. v. Honeywell Intern, Inc., 426 F.3d 694, 703 n.3 (3d Cir. 2005). The party seeking to recover fees has the burden to prove that the fees were actually incurred and are reasonable. See Interfaith, 426 F.3d at 703 n.3. The opposing party has the burden to raise specific objections regarding the reasonableness of the requested fee. See Witkowski v. Int'l Brotherhood of Boilermakers, Iron

---

[4] We note that Plaintiff filed a motion to "supplement" the record to inform the Court that LINA determined she was disabled under the "any occupation" standard, which was applied on remand following this Court's Memorandum Opinion. (Doc. No. 77.) Plaintiff contends that this decision is relevant to demonstrate that she obtained more than "some degree of success" on the merits and to demonstrate LINA's "bad faith or culpability." We conclude that attorney's fees are appropriate without considering LINA's subsequent disability decision, and therefore do not pass upon whether it is relevant to our consideration of the extent of her success or the Ursic factors.

Shipbuilders, Local Union 154, 2010 WL 1433104 at **4-5 (W.D.Pa. Apr. 7, 2010). The Court must exclude from the lodestar calculation any hours not reasonably expended, including hours deemed "'excessive, redundant or otherwise unnecessary.'" Id. (quoting McKenna v. City of Phila., 582 F.3d 447, 455 (3d Cir. 2009).

25. LINA does not dispute that Plaintiff's counsel's hourly rate is properly set at $300 dollars an hour. (Doc. No. 72 at 2-3.) LINA does, however, challenges five of Plaintiff's counsel's time entries as unreasonable, excessive or unnecessary, each of which will be addressed in turn:

– Plaintiff's counsel spent 1.15 hours traveling to Plaintiff's home and videotaping her condition for a settlement conference before the Honorable L. Felipe Restrepo. LINA contends that we should exclude this time because the video was never shown at the settlement conference and was never going to be entered into evidence. (Doc. No. 61 at 5.) It was not unreasonable for Plaintiff's counsel to prepare this video in an effort to settle the case, and we will include this time in our lodestar calculation.

– Plaintiff's counsel spent 1.4 hours "fixing a copier" and driving to his office on a weekend to work on his summary judgment brief. LINA claims that time spent fixing office equipment should not be assessed and that "it is not reasonable to pass additional charges onto LINA because Plaintiff's counsel elected to work on a weekend." (Doc. No. 61 at 6.) We agree on both accounts and will exclude this time from the lodestar calculation.

– Plaintiff's counsel spent 1.5 hours trying to "figure out how to use interest calculator – with offset used; several attempts." LINA contends that the time he spent learning to operate this program should be excluded as unreasonable or excessive. (Doc. No. 61 at 6.) While we do not think it is inappropriate to assess fees on this basis, we conclude that 1.5 hours is an excessive amount of time. We, therefore, will reduce this entry from 1.5 to .5.

– Plaintiff's counsel spent 1.1 hours researching and writing about "bad faith under state law as well as unreasonable contest" in state workers' compensation cases. LINA contends that this was unnecessary because this

        case was governed by ERISA, not state law. (Doc. No. 61 at 6.) While state law was not applicable in this case, it was somewhat reasonable for Plaintiff's counsel to compare state law on the question of "bad faith" to offer a point of reference. We will, however, reduce this entry to .5 hours.

      –    Plaintiff's counsel spent an estimated 3 hours working on "revised calculations for my subsequent revised Motion" on back benefits, and an estimated 2 hours discussing the Court's Memorandum Opinion with Plaintiff's Power of Attorney, in preparation for a second settlement conference before Judge Restrepo. LINA contends that this entry "seems excessive," particularly since Plaintiff's counsel spent significant time on his original calculations. (Doc. No. 72 at 2-3.) We agree that the time expended on the revised calculation is excessive, and will reduce this entry to 2 hours. We conclude, however, that the 2 hours Plaintiff's counsel spent discussing the status of the case with Plaintiff's Power of Attorney was reasonable and will be included in the lodestar calculation.

26.    Considering Plaintiff's counsel's detailed time entries as well as LINA's objections, he reasonably expended 76.3 hours on this matter at an hourly rate of $300. See (Doc. No. 55, Exs. B-C; Doc. No. 70, Attachment 2) (reflecting Plaintiff counsel's itemized time entries through the entire litigation). Plaintiff, therefore, is entitled to attorney's fees in the amount of $22,890.

COSTS

27.    Plaintiff also requests costs pursuant to 29 U.S.C. § 1132(g)(1). We have discretion to award costs, provided they are reasonable and reimbursable under applicable law. See Gorina v. AMP, Inc., 2004 WL 1354465 at *7 (M.D.Pa. Mar. 14, 2004) (awarding taxable costs under ERISA, listed under 28 U.S.C. § 1920 as well as other expenses). LINA does not specifically challenge Plaintiff's request, and we have no difficulty concluding that the imposition of costs is appropriate in this case.

28.    Plaintiff specifically requests $1,123.59 in costs, including the expenses she incurred

retrieving her medical records, paying the filing fees, effectuating service and making copies of her submissions to the Court. (Doc. No. 55, Ex. I.) These costs are reasonable and reimbursable, and therefore, will be awarded in full.

**THEREFORE**, it is hereby **ORDERED** that:

– Plaintiff's "Motion for Back Benefits and Interest Owed by Defendant Life Insurance Company of North America" (Doc. No. 52) is **GRANTED**, such that:

  – This matter shall be **REMANDED** to the Plan Administrator to determine the extent to which Plaintiff's "Other Income Benefits" under the Plan reduce her award of back benefits for the period between January 9, 2008 until June 22, 2009, given her receipt of social security benefits and the alleged eligibility of her children to social security benefits. The Plan Administrator shall also address the manner in which the "cost of living adjustment" (COLA) should be applied to calculate Plaintiff's long term disability benefits under the Plan.

  – No later than **thirty (30) days** after the Plan Administrator's decision on remand, Plaintiff shall file a motion and a proposed Judgment Order setting forth the amount of past benefits due by Defendant, in light of the Plan Administrator's decision, this Order and our Memorandum Opinion of June 21, 2011.

– Plaintiff's "Motion for Attorney Fees and Costs Against Defendant Life Insurance Company of North America" (Doc. No. 55) is **GRANTED**, such that Plaintiff is **AWARDED** $22,890 in attorney's fees and $1,123.59 in costs.

BY THE COURT:

/s/ Mitchell S. Goldberg

_____

**Mitchell S. Goldberg, J.**